UNITED STATES *v.* CHARLES H. DEMAREST, INC. (No. 4932) [1]

United States Court of Customs and Patent Appeals, May 23, 1958

*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Murray Sklaroff,* trial attorney, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*Edward N. Glad* and *Joseph Schwartz* of counsel) for appellee.

[Oral argument April 9, 1958, by Mr. FitzGibbon and Mr. Schwartz]

Before JOHNSON, Chief Judge, and WORLEY, and RICH, Associate Judges.

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, sustaining the importer's protest and holding

[1] C. A. D. 682.

the merchandise involved to be dutiable at 5 per centum ad valorem as "sea grass, manufactured," under paragraph 1540 of the Tariff Act of 1930 as modified by the Presidential proclamation relating to the general agreement, T. D. 51802, rather than at 25 per centum ad valorem as "manufactures of sea grass" under paragraph 1537 (a) of the Act, as classified by the collector.

As stated by the Customs Court, the merchandise "appears to be a two-strand cord, about three-sixteenths of an inch thick, each strand apparently consisting of pieces of sea grass twisted together, and the two strands tightly twisted around each other, apparently when wet, so that, presumably, they dried that way." The testimony shows that the merchandise is sold to handicraft supply outfits and basket makers, and that it is also used in the manufacture of furniture. The witnesses testified that it was not a braid, but that it might be called a cord, and that it was variously known as "twisted seagrass," "seagrass cord," and "Hong Kong rope."

The sole issue is whether the merchandise is classifiable as a "manufacture of sea grass" or as "sea grass manufactured." As was pointed out in *United States* v. *C. J. Tower & Sons*, 44 C. C. P. A. (Customs) 1, C. A. D. 626, the former classification normally requires that the original material be converted into a distinct and different article, while the latter may be satisfied by processing which serves merely to remove the material from its crude or primary state, even though it still remains a variety of the original material.

The instant merchandise appears to be substantially the same as that in *Barham et al.* v. *United States*, 11 Ct. Cust. Appls. 536, T. D. 39679, cited by the Government, which was described as follows:

The merchandise is made wholly of undyed sea grass (so called) or sedge. In view of the record and for the purposes of this case, the terms sea grass and sedge are treated as synonymous. There are several exhibits showing the condition of the merchandise as imported. One form thereof is in the shape of a cord between two and three sixteenths of an inch in diameter. This is referred to in the evidence as a two-ply cord and is composed of two smaller cords or strands tightly twisted together. These smaller cords are in turn composed of four thin strands between one and two sixteenths of an inch in width, which in turn have been twisted together.

It was further stated that the material was known as "twisted grass" or "twisted sea grass" and used in making furniture.

Also, the issue in *Barham* is substantially the same as that here, namely, whether the merchandise was classifiable as a manufacture of vegetable fiber, as sea grass manufactured, or as a manufacture of grass. It was held that the last classification was correct since "while the sea grass in this case has been manufactured, the manufacturing processes applied thereto have elevated it to the condition of a manufacture of sea grass or grass. Nothing more remains to be

done, as far as the record shows, to these cords and braids to constitute them a finished material ready for the manufacture of furniture."

In *O'Connor-Harrison & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 214, T. D. 42239, also cited by the Government, the merchandise included cords made in part of split unshredded lengths of dyed sea grass. They were held to be manufactures of sea grass rather than sea grass manufactured, since the grass had been "advanced to the status of a new article with a new name and a new use." It was pointed out that the cords were used in making furniture, baskets, mats, and rugs, while uncorded and unbraided sea grass was not used for any of those purposes, but was used for tying packages and stuffing mattresses, whereas the corded material was not so used.

In our opinion there is no significant difference, so far as classification is concerned, between the instant cords and those involved in the *Barham* and *O'Connor-Harrison* cases. Either all of them are manufactures of sea grass, or none of them are. The question presented here, therefore, is whether we should adhere to or overrule those decisions.

As was pointed out in our recent decision in *United States* v. *Mercantil Distribuidora, et al.*, 45 C. C. P. A. (Customs) 20, C. A. D. 667, the doctrine of *stare decisis* is applicable to cases such as the one at bar, and a former holding should not be disturbed in the absence of a convincing showing of error.

Appellee relies on *United States* v. *Wilkinson Process Rubber Sales Corp.*, 22 C. C. P. A. (Customs) 60, T. D. 47051; *United States* v. *Nippon Co. et al.*, 32 C. C. P. A. (Customs) 164, C. A. D. 303; and *United States* v. *C. J. Tower & Sons, supra*, as establishing a stricter meaning of the noun "manufacture" than that applied in the *Barham* and *O'Connor-Harrison* cases. It does not appear to us, however, that those decisions present any stricter definition of that word. All of them except the *Tower* case cite the decision of the Supreme Court in *Tide Water Oil Company* v. *United States*, 171 U. S. 210, in which the following statement was made with respect to a "manufacture":

Ordinarily, the article so manufactured takes on a different form or at least subserves a different purpose from the original materials, and usually it is given a different name.

An examination of the cited decisions indicates that each of them adopts substantially the standard set forth in the above excerpt. The *Barham* and *O'Connor-Harrison* cases, as well as those relied on by appellee, clearly recognize that there is a distinction between a manufacture of a material and the material manufactured, and apply substantially the above definition.

We do not find that the decisions relied on by appellee afford a basis for departing from the conclusion reached in the *Barham* and *O'Connor-Harrison* decisions.

Appellee also notes that the testimony of record is to the effect that the instant merchandise represents the crudest form in which sea grass is imported into the United States, and argues that if such merchandise is a manufacture it is not clear what Congress meant in referring to "sea grass, if manufactured" in paragraph 1540. A similar contention was advanced in *Associated Manufacturers Importing Co. et al.* v. *United States*, 50 Treas. Dec. 339, T. D. 41818, cited by the government, and was disposed of by the Customs Court as follows:

Neither are we impressed with the further argument that the said provision [for sea grass, manufactured or dyed] must necessarily have reference to the so-called twisted and braided sea grass here in question, as there is no cruder form of such material imported. It may be the crudest form in which it has been imported up to the present, but that does not prove it could not be imported in a less highly manufactured state to come within said provision.

We are in agreement with that view, and think it applicable here.

In the instant case, the Customs Court seems to have been influenced by the fact that paragraph 409 of the Tariff Act of 1930 contains a provision for "Furniture wholly or in chief value of * * * seagrass * * *." The court stated that "Congress evidently considered the material of which such furniture is made to be sea grass, and not a new and different material having a different name from sea grass." We do not agree with that view. In our opinion there is nothing in the language of paragraph 409 to preclude the sea grass from having been made into an intermediate manufacture before being incorporated into furniture. It may be noted, by way of example, that paragraph 360 of the 1930 Tariff Act provides for "Scientific and laboratory instruments * * * wholly or in chief value of metal," although it is a matter of common knowledge that many such instruments are not made directly from raw metal, but are assemblies of various parts, many of which may have had distinct status as manufactures of metal.

It is significant that at the time the provision for manufactures of sea grass was included in the Tariff Act of 1930, there had been uniform judicial rulings, as above noted, to the effect that sea grass cord of the type here, was a manufacture. Moreover, the *O'Connor-Harrison* case, *supra*, was expressly mentioned in the 1929 Summary of Tariff Information on the 1922 Tariff Act, which was printed for use of the Committee on Ways and Means of the House of Representatives in connection with making the readjustments which resulted in the 1930 Act. Under such circumstances, inclusion in the 1930 Act of the provision for manufactures of sea grass appears to be a legislative adoption of the judicial interpretation of that term.

As was stated in the *Barham* case, "The question of whether or not an article is manufactured of a given material or whether it is a manufacture of the same material is one that has given the courts much

trouble." In that case the court carefully considered substantially the same merchandise and issues involved here, and concluded the merchandise had been sufficiently advanced in condition to become a manufacture.

Since, for the reasons given, we reach a similar conclusion with respect to the instant merchandise, it becomes necessary to *reverse* the judgment appealed from.